# UNITED STATES DISTRI CT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANGEL L. PACHECO JR.<br><br>   Plaintiff,<br><br>v.<br><br>MIDLAND FUNDING, LLC.<br><br>   Defendant. | CIVIL ACTION   1:16-cv-09360<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES the Plaintiff, ANGEL L. PACHECO JR., ("Plaintiff"), by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendant, MIDLAND FUNDING LLC. ("Defendant," or "Midland") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227, violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692, and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the TCPA, FDCPA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

4.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Northern District of Illinois and all of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

## PARTIES

5.  Plaintiff is a consumer and natural person over 18-years-of-age who, at all times relevant, resided in the Northern District of Illinois.

6.  Defendant Midland is a limited liability company organized under the laws of Delaware with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, California 92108, and its registered agent in Illinois is Illinois Corporation Service C, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703. Defendant is engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted loans owed or due, or asserted to be owed or due to others using the mail and telephone, including consumers in the State of Illinois. Defendant is one of the nation's biggest buyers of unpaid debt. Defendant purchases accounts with an unpaid balance where consumers have gone at least 180 days without making a payment, or paid less than the minimum monthly payment.[1]

## FACTS SUPPORTING CAUSE OF ACTION

7.  In 2012, Plaintiff opened a credit card account with Capital One Bank ("Capital One") for personal use.

8.  In December 2015, Plaintiff's home burned down and he fell behind on his payments to Capital One in the approximate amount of $1,444.36 ("subject debt") leading him to default on the subject debt.

---

[1] https://www.midlandcreditonline.com/who-is-mcm/midland-funding-llc/ [last visited: 9/23/2016]

9. On or around August 29, 2014, the subject debt was purchased, assigned or transferred to Midland for collection, or Defendant was employed by the Creditor to collect the subject debt.

10. In September 2014, Midland began placing collection calls to Plaintiff's cellular telephone ending in 3685.

11. At all times relevant, Plaintiff was the sole subscriber, owner, possessor, and operator of this cellular telephone number. Plaintiff is and has always been financially responsible for this cellular telephone and its services.

12. Plaintiff *never* provided his cellular telephone number to Midland or otherwise expressly consented to Midland's phone calls.

13. In early September 2014, Plaintiff answered a phone call from Midland. In that call, Midland repeatedly requested Plaintiff to provide his name and the last four digits of his social security number. Plaintiff demanded that Midland stop placing calls to his cellular phone.

14. In response, a Midland representative stated that: "If you pay your bills we will stop calling you."

15. At no time did the Midland's representative disclose to Plaintiff the mini-Miranda warning[2] during Defendant's telephone communications in which Defendant attempted to collect the subject debt.

16. Notwithstanding Plaintiff's requests that Midland's collection calls cease, Midland placed, or caused to be placed, numerous phone calls between September 2014 and May 2016 in an attempt to collect upon the subject debt.  On some days, including weekends, Midland would call 4 or more times in a given day.

---

[2] "This is an attempt to collect a debt and any information obtained will be used for that purpose."

17. Midland also placed many calls to Plaintiff's father, stepfather, and friend, in an attempt to ascertain Plaintiff's location while making threats, that if Plaintiff does not pay the subject debt, Midland will garnish his wages.

18. In April of 2016, Midland placed a call to Plaintiff's employer. In that call, Midland communicated to Plaintiff's employer that Plaintiff is past due on his bills and that it is calling to collect on the subject debt.

19. Plaintiff answered no less than 10 calls from Midland. In the majority of these calls, Plaintiff demanded that Midland cease further calls to Plaintiff's cellular phone.

20. Plaintiff's demands that Midland's phone calls cease fell on deaf ears and Midland continued its phone harassment campaign.

21. In total, Defendant placed or caused to be placed no less than 200 harassing phone calls to Plaintiff's cellular phone from September of 2014 through May of 2016.

22. In the calls that Plaintiff did answer, Plaintiff was greeted by a noticeable period of "dead air" while Defendant's automated telephone system attempted to connect Plaintiff to a live agent.

23. Specifically, there would be an approximate 3-second pause between the time Plaintiff said "hello," and the time that a live agent introduced them self as a representative of Defendant.

24. In the majority of the phone calls that Plaintiff answered, Defendant failed to disclose its identity as a debt collector.

## DAMAGES

25. Midland's harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

26. In December of 2015, feeling stressed and overwhelmed by Midland's harassment, Plaintiff sought medical treatment. Plaintiff was subsequently diagnosed with anxiety, depression,

and hypertension. Plaintiff was prescribed and took medication as a result. Midland's relentless phone calls instantaneously triggered or exacerbated Plaintiff's symptoms.

27. Moreover, many of Midland's phone calls to Plaintiff were placed during business hours. These calls distracted Plaintiff; decreased his work productivity, and especially triggered or exacerbated his symptoms.

28. Midland's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, intrusion upon and occupation of Plaintiff's cellular telephone capacity, wasting Plaintiff's time and causing risk of injury by interrupting and distracting Plaintiff, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

29. In addition, each time Midland placed a telephone call to Plaintiff, Midland occupied Plaintiff's telephone number such that Plaintiff was unable to receive other phone calls.

30. Concerned about the violations of his rights, invasion of his privacy, and overall health, Plaintiff was forced to seek the assistance of counsel to file this action to compel Midland to cease its unlawful conduct, thus incurring costs and expenses.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

31. Plaintiff restates and realleges paragraphs 1 through 30 as though fully set forth herein.

32. Defendant placed or caused to be placed non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") without his consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

33. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

34. Based on the lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used a predictive dialing system to place calls to Plaintiff's cellular telephone.

35. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

36. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

37. Upon information and belief, the predictive dialing system employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

38. Defendant violated the TCPA by placing no less than 200 harassing phone calls to Plaintiff's cellular phone from September of 2014 to May of 2016, with calls taking place 4 or more times on some days, including weekends, to Plaintiff's cellular phone, using an ATDS and without Plaintiff's prior express consent.

39. Moreover, as plead above, Plaintiff demanded that Defendant cease calls to his cellular phone on no less than 10 separate occasions during the phone calls in which he answered.

40. As pled above, Plaintiff was severely harmed by Defendant's collection calls to his cellular phone.

41. Upon information and belief, Defendant has no system in place to document and archive whether it has consent to contact consumers on their cellular phones.

42. Upon information and belief, Defendant knew its collection practices were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

43. Defendant, through its agents, representatives and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

44. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff ANGEL L. PACHECO JR. requests that this Honorable Court:

a. Declare Defendant's phone calls to Plaintiff to be violations of the TCPA;
b. Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and
c. Award any other relief this Honorable Court deems equitable and just.

### COUNT II – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

45. Plaintiff restates and realleges paragraphs 1 through 30 as though fully set forth herein.

46. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

47. The subject debt arose from a credit card provided by Capital One, which was used for primarily family, personal or household purposes, and thus is a "debt" as defined by FDCPA §1692a(5).

48. Defendant is a "debt collector" as defined by §1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

49. Defendant qualifies as a "debt collector" because it acquired rights to the subject debt after it was in default. 15 U.S.C. §1692a(6).

50. Defendant's telephone communications to Plaintiff were made in connection with a collection of the subject debt.

51. Defendant used telephones to attempt to collect the subject debt and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

52. Defendant violated 15 U.S.C. §§1692b(2), b(3), d, d(5), and e(11), through its unlawful collection practices.

    a. **Violations of FDCPA §1692b**

53. Defendant violated §1692b(2) by informing third parties that Plaintiff owed the subject debt and when Defendant described the nature of the subject debt. Defendant made these communications to Plaintiff's father, stepfather, friend, and employer.

54. Defendant violated §1692b(3) by contacting Plaintiff's father, stepfather, friend, and employer, regarding the subject debt on numerous occasions, without being requested to do so.

    b. **Violations of FDCPA §1692d**

55. Defendant violated §1692d by engaging in abusive, harassing, and oppressive conduct by relentlessly calling Plaintiff's cellular phone seeking immediate payment of the subject debt. Moreover, on no less than 10 separate occasions, Defendant continued placing the relentless calls after Plaintiff demanded that the calls cease.

56. Defendant violated §1692d(5) by causing Plaintiff's cellular phone to ring repeatedly and continuously in an attempt to engage Plaintiff in conversations regarding the collection of the

subject debt with the intent to annoy, abuse, or harass Plaintiff. Specifically, Defendant placed or caused to be placed no less than 200 harassing phone calls to Plaintiff's cellular phone from September of 2014 to May of 2016, with calls taking place 4 or more times on some days, including weekends.

### c.  Violations of FDCPA §1692e(11)

57. Defendant violated §1692e(11) by failing to disclose its identity as a "debt collector" as required by the FDCPA in the phone calls it placed to Plaintiff's cellular phone between September of 2014 and May of 2016.

58. Upon information and belief, Defendant systematically attempts to collect debts through harassing conduct and has no procedures in place to assure compliance with the FDCPA.

59. As stated above, Plaintiff was severely harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff ANGEL L. PACHECO JR. requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
c. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and
d. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT

60. Plaintiff restates and reallages paragraphs 1 through 30 as through fully set forth herein.

61. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . .

> in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

62. Plaintiff is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/(c) and (e) respectively.

63. Defendant is engaged in commerce in the State of Illinois with regard to Plaintiff and the subject debt. Defendant specializes in debt collection, which is an activity within the stream of commerce and utilized in its regular course of business.

64. Defendant violated 815 ILCS 505/2 by engaging in unfair and deceptive acts in its attempts to collect the subject debt from Plaintiff.

    **a. Unfairness and Deception**

65. It was unfair and deceptive for Defendant to seek to collect the subject debt from the Plaintiff through relentless harassing phone calls to his cellular phone attempting to induce him into making a payment.

66. It was unfair for Defendant to place or cause to be placed no less than 200 harassing phone calls to Plaintiff's cellular phone from September of 2014 to May of 2016 with calls taking place 4 or more times on some days, including weekends, to Plaintiff's cellular phone with the use of an ATDS.

67. It was unfair for Defendant to place numerous calls to Plaintiff's father, stepfather, and friend attempting to ascertain Plaintiff's location while making threats that if Plaintiff does not pay, Midland will garnish his wages.

68. It was unfair for Defendant to place a call to Plaintiff's employer stating that Plaintiff is past due on his bills and that it is calling to collect on the subject debt.

69. It was unfair for Defendant to continue placing calls to Plaintiff after he demanded that the calls cease on no less than 10 separate occasions.

70. It was unfair and deceptive for Defendant to fail to disclose its identity as a debt collector during the phone calls in which Plaintiff answered.

71. Defendant's unfair conduct is inherently oppressive as Plaintiff had no choice but to submit to the relentless harassing phone calls to his cellular phone.

72. Moreover, Defendant's unfair conduct is against public policy because it needlessly subjects consumers to unsolicited calls, resulting in a significant harm in the form of invasion of privacy.

73. Upon information and belief, Defendant systematically places unsolicited and harassing phone calls to consumers in Illinois in order to aggressively collect debts in default or assumed to be in default to increase its profitability at the consumers' expense.

74. Upon information and belief, placing unsolicited and harassing phone calls to Illinois consumers is an unfair business practice willfully employed by Defendant and is done on a large scale.

75. Additionally, Defendant's unlawful and unfair debt collection efforts gives it an unfair competitive advantage over businesses that collect debts lawfully (companies who legally place calls with prior consent, as authorized, and who lawfully cease calling upon requests to stop).

76. As alleged above, Plaintiff was substantially harmed by Defendant's misconduct.

77. An award of punitive damages is appropriate because Defendant's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of the Plaintiff and consumers, generally, and Plaintiff had no choice but to submit to the seemingly never-ending phone calls.

**WHEREFORE**, Plaintiff ANGEL L. PACHECO JR. requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against Defendant;
b. Award Plaintiff his actual damages in an amount to be determined at trial;
c. Award Plaintiff his punitive damages in an amount to be determined at trial;
d. Award Plaintiff his reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and
e. Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Dated: September 29, 2016                    **Respectfully Submitted,**

/s/ Majdi Y. Hijazin, *Of Counsel*

Majdi Y. Hijazin, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Suite 150
Oak Brook, IL 60523
Phone: (630) 575-8181
Fax: (630) 575-8188
mhijazin@hijazinlaw.com